JOHN J. MARTIN vs. STATE BOARD OF PAROLE.

Suffolk.    January 5, 1966. — February 7, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Parole.    Imprisonment.    Constitutional Law,* Due process of law.

Due process of law under the Fourteenth Amendment of the Federal Con-
stitution and art. 12 of the Declaration of Rights of the Massachusetts
Constitution does not entitle a parolee from a penal institution to a
hearing before the State Board of Parole upon revocation of his parole
by the board. [212]

A parolee from a penal institution whose parole was revoked by the State
Board of Parole without hearing and who was subsequently arrested and
sentenced to imprisonment for a new crime was not entitled to credit for
the days between the revocation of his parole and such arrest. [214]

BILL IN EQUITY filed in the Supreme Judicial Court for
the county of Suffolk on April 12, 1965.

The suit was reserved and reported by *Spalding,* J.

*Edward J. Barshak* for the plaintiff.

*Richard W. Murphy,* Assistant Attorney General, for the
defendant.

WILKINS, C.J.    The plaintiff, who is serving a sentence
at the Massachusetts Correctional Institution at Walpole,
seeks a binding declaration as to (1) whether he was en-
titled to a hearing upon revocation of his parole by the de-
fendant board, and (2) whether upon return to impris-
onment he should have received credit for time elapsed
between revocation of parole and arrest.    The case was
heard upon agreed facts by a single justice, who reserved
and reported it without decision to the full court.

In 1956 the plaintiff was sentenced, and on October 31,
1960, was paroled.    On November 23, 1960, a parole officer
filed a report with the board that the plaintiff's where-
abouts were unknown, and that he had left his home and
work without permission.    On the same date the board,
after study of that report and of another report of his back-

ground, revoked his permit to be at liberty.  G. L. c. 127, §§ 147, 148, 149.[1]

There are no written rules and regulations whereby parolees are entitled prior to revocation to a hearing to determine whether a permit to be at liberty shall be revoked. It is not the custom or practice of the board to grant such hearings.  No hearing of any sort was provided or offered to the plaintiff.  There are written rules whereby parolees are entitled to an interview with the board subsequent to revocation, usually within sixty days, at which the violation may be explained and reparole sought.  In many instances a parolee whose permit to be at liberty has been revoked has been released on reparole as a result of the interview.  In that event no credit is given for time served between revocation and return to prison.

On December 28, 1960, the plaintiff was discovered by the police in Brockton, and arrested for assault with intent to rob.  On January 6, 1961, he was indicted, and on January 9, 1961,[2] was sentenced to seven to ten years to be

[1] § 147.  "The violation by the holder of a permit to be at liberty of any of the terms or conditions of his permit or the violation of any law of the commonwealth shall render his permit void."

§ 148.  "The board or officer granting to a prisoner a permit to be at liberty may revoke it at any time previous to its expiration."

§ 149.  "The parole board, the county commissioners or, in Suffolk county, the penal institutions commissioner of Boston, if a permit to be at liberty granted or issued by them, respectively, has become void or has been revoked, or if a prisoner on parole under section one hundred and forty-one has been ordered to return to prison, may order the arrest of the holder of such permit or of such prisoner on parole by any officer qualified to serve civil or criminal process in any county, and the return of such holder or of such prisoner on parole to the prison to which he was originally sentenced.  A prisoner who has been so returned to prison shall be detained therein according to the terms of his original sentence.  In computing the period of his confinement, the time between his release upon a permit or on parole and the revocation of such permit or parole shall be considered as part of the term of his sentence, and the time between the revocation of his permit or parole and his return to the prison to which he was originally sentenced shall not be considered as any part of the term of his original sentence.  If at the time of the order to return to prison or of the revocation of his permit he is confined in any prison, service of such order shall not be made until his release therefrom, and the time served by him upon any sentence under which he is so confined shall not be considered as any part of the term of his original sentence."

[2] The record does not disclose the details of the conviction.  From the brief interval between indictment and sentence we infer that there was a plea of guilty.

served forthwith with credit for eleven days in jail await-
ing trial and to be served "concurrently with any sentences
subject may now be serving or with any sentences he may
later serve as a result of violation of parole brought about
by this case." On January 9, 1961, the plaintiff was re-
turned to the correctional institution, and the warrant of
the parole board was served upon him.[3] On October 9,
1962, upon an indictment for attempted escape the plaintiff
was sentenced to the term of three to five years to be served
concurrently with the sentences then being served.

The Commissioner of Correction and the board have de-
termined that the plaintiff became eligible for considera-
tion for parole on October 8, 1964. In determining eligibil-
ity for parole and credit for time served, the commissioner
and the board excluded the period from November 23, 1960,
until December 28, 1960.[4]

The plaintiff contends that the constitutional mandate of
due process of law entitled him to a hearing on the revoca-
tion of his permit, that such a hearing should have taken
place as soon as feasible after the revocation, and that he
was also entitled to have the assistance of counsel and to
present evidence. He relies upon the Fourteenth Amend-
ment to the Constitution of the United States and art. 12 of
the Declaration of Rights of the Massachusetts Constitu-
tion. We do not accept these contentions. On these ques-
tions it may be conceded that there is a division of judicial
authority. See 29 A. L. R. 2d 1074, which has a full anno-
tation to *Ex parte Anderson,* 191 Ore. 409. No protracted
discussion is called for, however, as we think that the
sounder reasoning is with the majority view and adverse to
the plaintiff.

In *Escoe* v. *Zerbst,* 295 U. S. 490, a case of revocation of
probation, the decision was unanimous. The opinion by

---

[3] This was more favorable to the plaintiff than the last sentence of G. L.
c. 127, § 149, quoted in fn. 1.

[4] Unlike Massachusetts (see G. L. c. 127, § 149) a parole violator in the
Federal system does not receive credit for time out on parole. 18 U. S. C.
§ 4205 (1964).

Mr. Justice Cardozo held that a provision of an act of Congress requiring that upon rearrest for violation of parole a probationer "shall forthwith be taken before the court" was mandatory. But the opinion, which the plaintiff does not cite, states (pages 492–493), "In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose. *Burns* v. *United States*, 287 U. S. 216. But the power of the lawmakers to dispense with notice or a hearing as part of the procedure of probation does not mean that a like dispensing power, in opposition to the will of Congress, has been confided to the courts. The privilege is no less real because its source is in the statute rather than in the Fifth Amendment." In *Fleenor* v. *Hammond*, 116 F. 2d 982, 986 (6th Cir.), relied upon by the plaintiff, the *Zerbst* case was erroneously cited as an authority. See *Ex parte Anderson, supra,* 438, 439; 29 A. L. R. 2d, *supra,* 1081–1082.

The Supreme Court of the United States has likened a parole violator to "an escaped convict." *Anderson* v. *Corall,* 263 U. S. 193, 196–197. *Zerbst* v. *Kidwell,* 304 U. S. 359, 361.

The plaintiff was originally convicted in accordance with due process of law. While serving his sentence he was released on parole. He not only violated the conditions of his parole in concealing his whereabouts, but he chose to commit another felony. See *Conlon's Case,* 148 Mass. 168, 171; *Murphy* v. *Commonwealth,* 172 Mass. 264, 272; *Kozlowsky, petitioner,* 238 Mass. 532, 536–537; *Harding* v. *State Bd. of Parole,* 307 Mass. 217, 220. See also *Kennedy's Case,* 135 Mass. 48, 53 (conditional pardon).

The plaintiff, without specific quotation, refers us broadly to articles in several legal periodicals which we assume are favorably disposed toward his arguments. For the present, however, we prefer to rely upon *Escoe* v. *Zerbst, supra,*

as the authoritative pronouncement under the Fourteenth Amendment. While that case stands, we shall not establish a less strict requirement under the Constitution of this Commonwealth.

A decree is to enter declaring that the plaintiff was not entitled to a hearing before the defendant board upon revocation of his parole; and that he was not entitled to credit for time elapsed between revocation of parole and arrest.

*So ordered.*