THEODORE SHOOLMAN & others[1] vs. HEALTH
FACILITIES APPEALS BOARD & others.[2]

Suffolk. April 14, 1980. — December 11, 1980.

Present: ARMSTRONG, ROSE, & DREBEN, JJ.

*Public Health. Department of Public Health*, Certificate of need. *Health Care Facility. Jurisdiction*, Review of decision of Health Facilities Appeals Board. *Administrative Law*, Standing, Judicial review.

The Superior Court had jurisdiction under G. L. c. 111, § 25E, to review a decision of the Health Facilities Appeals Board affirming without a fact-finding hearing the Department of Public Health's grant of a determination of need pursuant to the provisions of c. 111, § 25C. [802-803]

Ten taxpayers of the Commonwealth had standing under the provisions of G. L. c. 111, § 25E and § 25G, to seek in the Superior Court review of a decision of the Health Facilities Appeals Board affirming the Department of Public Health's grant of a determination of need pursuant to c. 111, § 25C. [803-805]

The Department of Public Health was not required to make a comprehensive regional analysis of and plan for ambulatory care services prior to issuing a determination of need pursuant to G. L. c. 111, § 25C, to a hospital for the construction of a new ambulatory care center. [805-806]

CIVIL ACTION commenced in the Superior Court Department on August 18, 1978.

The case was heard by *Lynch*, J.

---

[1] Additional plaintiffs are nine other taxpayers of the Commonwealth who, along with the named plaintiff, formed the Charles River Park Ten Taxpayer Group in order to participate in the administrative proceedings in this case pursuant to G. L. c. 111, § 25C.

[2] Additional defendants are the Department of Public Health, Massachusetts General Hospital and the Beacon Hill Civic Association Health Care Committee Ten Taxpayer Group.

*Robert J. Muldoon, Jr. (Jill E. Fallon* with him) for the plaintiffs.

*Catherine A. White,* Assistant Attorney General, for the Health Facilities Appeals Board & another.

*Kenneth Laurence* for the Massachusetts General Hospital & another.

ROSE, J.   This is an appeal from a judgment of the Superior Court affirming a decision of the Health Facilities Appeals Board affirming the Department of Public Health's grant of a determination of need pursuant to the provisions of G. L. c. 111, § 25C,[3] to Massachusetts General Hospital for the construction of a new ambulatory care center.[4]   The plaintiffs, ten taxpayers of the Commonwealth, sought review in the Superior Court under G. L. c. 30A, § 14, as permitted by G. L. c. 111, § 25E.

General Laws c. 111, § 25C, provides that no substantial capital expenditure for the construction of any part of a health care facility can be made without a prior administrative determination by the Department of Public Health (Department) that there is a need for the facility.   On September 2, 1974, Massachusetts General Hospital (MGH) applied to the Department for a determination of need authorizing the construction of a twenty-five million dollar ambulatory care center (ACC).[5]   A certificate of need was finally issued to MGH by the Department on March 6, 1978.[6]

---

[3] General Laws c. 111, §§ 25B-25G, were inserted by St. 1972, c. 776, § 3, and are popularly known as the Determination of Need law.

[4] Ambulatory care services may generally be defined as out-patient health care services.

[5] As originally proposed, the center would have housed physicians' offices, day surgery facilities, radiological and laboratory support services, a pharmacy, and computer and administrative services.

[6] The Department issued an initial determination of need to MGH on March 26, 1976.   The plaintiffs appealed from the decision to the Health Facilities Appeals Board, and the Board remanded the matter to the Department for reasons not relevant here.   The Department then undertook a second investigation of MGH's application, one result of which was the elimination of computer space from the proposed ACC.

The plaintiffs thereupon filed an appeal to the Health Facilities Appeals Board (Board) pursuant to G. L. c. 111, § 25E.[7] The essence of the plaintiffs' claim before the Board, as well as in the prior administrative proceedings in this matter,[8] was that the Department could not lawfully issue a determination of need without first making a comprehensive regional analysis of and plan for ambulatory care services. The Board rejected this argument, stating that neither the enabling statute nor its legislative history mandated a systemic analysis by the Department prior to the issuance of a determination of need and that the Legislature had intended that the Department have wide discretion in administering the statute. The Board then ruled that there was sufficient evidence to support the Department's findings that the existing ambulatory care facilities at MGH were inadequate and inefficient; that approximately eighty per cent of this care originated in referrals and was expected to continue so; and that it was appropriate that MGH should continue to provide its current level of services to the public.

The plaintiffs then sought judicial review of the Board's decision in the Superior Court pursuant to G. L. c. 30A, § 14, as permitted by G. L. c. 111, § 25E. The Superior Court affirmed the Board's decision and dismissed the plaintiffs' appeal on the alternative grounds that: (1) the court lacked jurisdiction over the subject matter of the action; (2) the plaintiffs lacked standing to bring the action; (3) the final decision of the Board was not arbitrary or capricious, an abuse of discretion, or otherwise not in accordance

---

[7] General Laws c. 111, § 25E, provides in pertinent part that "[a]ny person . . . empowered to request a public hearing under the provisions of section twenty-five C, and aggrieved by the determination [of the Department] may . . . file an appeal to the health facilities appeals board." General Laws c. 111, § 25C, provides that "any ten taxpayers of the [C]ommonwealth" may request a public hearing on an application for a determination of need.

[8] The plaintiffs had raised their objections to MGH's application at a public hearing before the Department and on their first appeal to the Board.

with law; and (4) the decision of the Board was supported by substantial evidence.

(1) *Subject Matter Jurisdiction.*

On appeal to the Superior Court, the two private defendants[9] raised the argument that the court lacked jurisdiction over the subject matter of this case. Their argument is grounded on the fact that G. L. c. 111, § 25E, which establishes the procedures and the standards of administrative review of decisions of the Department by the Board, states that the Board's decisions "shall be subject to judicial review under the provisions of section fourteen of chapter thirty A [the State Administrative Procedure Act] to the extent they are not inconsistent with the provisions of this section." From this the defendants argue that because judicial review under the State Administrative Procedure Act is predicated on an "adjudicatory proceeding" before an agency, judicial review under G. L c. 111, § 25E, is limited to those instances in which the Board has conducted a fact-finding hearing.[10] We disagree.

It is a well established rule that a court has the duty "to construe a legislative act so as to effectuate fully the statutory purpose." *Everett Town Taxi, Inc.* v. *Aldermen of Everett,* 366 Mass. 534, 536 (1974). *Foley* v. *Lawrence,* 336 Mass. 60, 65 (1957). *New York Cent. R.R.* v. *New England Merchs. Natl. Bank,* 344 Mass. 709, 713 (1962). The Determination of Need law was enacted as a comprehensive scheme to prevent the "unnecessary expansion by health care institutions of their patient care facilities," *Brookline* v. *Medical Area Serv. Corp.,* 8 Mass. App. Ct. 243, 250 (1979), and to achieve a better distribution of health care resources in the Commonwealth. 1972 House Doc. No. 5968, at 5-7.[11] Recognizing that it was dealing

---

[9] The government defendants in this case have not argued that the Superior Court lacked subject matter jurisdiction.

[10] General Laws c. 111, § 25E, provides that the Board's review of departmental decisions is restricted to the materials on file except in the event that they are found to be inadequate in which case the Board may conduct a fact-finding hearing.

[11] 1972 House Doc. No. 5968 is popularly known as the Foley Report.

with "a very fluid, evolving body of knowledge," the Legislature decided to accomplish its purpose by enacting a statute which would grant wide flexibility to the agency administering it, *id.* at 26-27, but which would also make it accountable to the consuming public. *Id.* at 39. General Laws c. 111, §§ 25C, 25E, therefore, make provision for public hearings, when either requested or required, on any application for a determination of need and on administrative reviews of decisions of the Department. Judicial enforcement of the provisions is also provided by the statute.[12] To interpret the jurisdictional provisions of the statute so as to preclude judicial review in the majority of cases would be to frustrate the legislative intent. Compare *Boston* v. *Massachusetts Port Authy.*, 364 Mass. 639, 646-647 (1974).

We conclude that the reference in G. L. c. 111, § 25E, to the provisions of G. L. c. 30A, § 14, "to the extent they are not inconsistent with" those of section 25E, must be read as adopting only the procedure and standards of review provisions of § 14,[13] and therefore that the Superior Court had jurisdiction over the subject matter.

(2) *Standing.*

The private defendants argue that the plaintiffs, as ten taxpayers of the Commonwealth, lacked standing to sue in the Superior Court because they did not and could not meet the standing requirements of G. L. c. 30A, § 14,[14] as adopted by G. L. c. 111, § 25E. They argue that, under § 14, standing has traditionally depended upon a showing that a private legal right has been infringed. See, e.g., *School*

---

[12] General Laws c. 111, § 25G, confers jurisdiction on the Superior and Supreme Judicial Courts to enforce the provisions of the Determination of Need law.

[13] Our interpretation of the statute is further supported by the fact that the Supreme Judicial Court, without discussion, has found such jurisdiction to exist. *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.*, 376 Mass. 359, 378 (1978) (Quirico, J., concurring in part and dissenting in part).

[14] In order to invoke judicial review under G. L. c. 30A, § 14, a plaintiff must be a "person . . . aggrieved" by a final decision of an agency.

*Comm. of Springfield* v. *Board of Educ.*, 365 Mass. 215, 229-230 (1974), cert. denied, 421 U.S. 947 (1975). A showing that one is attempting to vindicate only "public interests," they maintain, is insufficient. See, e.g., *Reid* v. *Acting Commr. of the Dept. of Community Affairs*, 362 Mass. 136, 141-142 (1972). We again disagree.

There can be no serious question that the Legislature has power to confer standing to sue upon ten taxpayers of the Commonwealth. *Barrows* v. *Farnum's Stage Lines, Inc.*, 254 Mass. 240, 243 (1926). The question before us, therefore, is whether the Legislature has authorized taxpayers to bring suit on disputes arising under the Determination of Need law. G. L. c. 111, §§ 25A-25G.[15]

General Laws c. 111, § 25E, is silent as to the question of taxpayers' standing to seek judicial review. While § 25E permits any ten taxpayers of the Commonwealth to seek administrative review of a decision of the Department, it states only that, if an appeal before the Board is denied, "said decision shall be subject to judicial review." It does not specify who may seek such review. General Laws c. 111, § 25G, however, answers this question. Section 25G expressly provides that "any ten taxpayers in the commonwealth" can request the Superior and Supreme Judicial Courts to enforce the statute. It is the duty of this court to interpret a statute so that its provisions constitute a consistent and harmonious whole. *Bolster* v. *Commissioner of Corps. & Taxn.*, 319 Mass. 81, 84-85 (1946). Were we to read into § 25E the standing requirements argued by the defendants, it would severely qualify the otherwise clear language of § 25G. Furthermore, we are reluctant to interpret narrowly the rights of review of taxpayers under a statute which makes the interest and role of the public "of central

---

[15] The plaintiffs' standing is conferred by the provisions of the Determination of Need law and not by the State Administrative Procedure Act. The defendants' contentions dealt with the State Administrative Procedure Act as the source of standing. Compare *Newton* v. *Department of Pub. Util.*, 339 Mass. 535, 543 (1959); *Save the Bay, Inc.* v. *Department of Pub. Util.*, 366 Mass. 667, 673 (1975).

importance." 1972 House Doc. No. 5968, at 40. Compare *Wilmington* v. *Department of Pub. Util.*, 340 Mass. 432, 437-439 (1960); *State Bd. of Retirement* v. *Contributory Retirement Appeal Bd.*, 342 Mass. 58, 60 (1961).

We conclude that under the provisions of G. L. c. 111, § 25E and § 25G, the plaintiffs had standing to sue.[16]

(3) *Error of Law.*

The only question before us on the merits in this case is whether the Board erred in affirming the Department's decision to grant a determination of need to MGH in the absence of a regional study demonstrating the need for the facility. The plaintiffs argue that this study is clearly mandated by the statute. We find no support for this argument.

General Laws c. 111, § 25C, provides that "no person . . . shall make substantial capital expenditures for construction of a health care facility . . . unless there is a determination by the department that there is need therefor." The only guideline for defining the "need" which the Department must find is provided in the next paragraph of § 25C, which reads: "The department, in making any such determination, shall *encourage* appropriate allocation of private and public health care resources and the development of alternative or substitute methods of delivering health care services so that adequate health care services will be made reasonably available to every person within the [C]ommonwealth at the lowest reasonable aggregate cost" (emphasis supplied). We cannot read the word "encourage" to impose an obligation on the Department to make a systemic study prior to a valid grant of a determination of need. Absent some indication to the contrary, the plain language of a statute must be interpreted "in accordance with the usual and natural meaning of the words." *Commonwealth* v. *Thomas*, 359 Mass. 386, 387 (1971). Nothing in the legislative history of the statute leads us to

---

[16] It should be noted that this court has assumed without discussion that taxpayers have such standing to sue. *Brookline* v. *Medical Area Serv. Corp.*, 8 Mass. App. Ct. at 243 n.1.

interpret this provision otherwise. 1972 House Doc. No. 5968 clearly indicates that the Legislature recognized the need for flexibility in administering the Determination of Need law and set out only broad policy guidelines for the Department. *Id.* at 26-27. *Brookline* v. *Medical Area Serv. Corp., supra* at 250-251.[17]

Accordingly, the judgment is modified to provide only that the decision of the Health Facilities Appeals Board is affirmed, and, as so modified, the judgment is affirmed.

*So ordered.*

---

[17] We do not reach the question of the proper standard of judicial review of the Board's factual findings because no factual dispute has been presented to us. The plaintiffs have simply argued that any determination of need granted without reference to a regional plan is inherently arbitrary or capricious or unsupported by substantial evidence. Having concluded that a system-wide plan is not a statutory prerequisite to the grant of a determination of need, we further conclude that the plaintiffs have failed to sustain their burden of challenging the sufficiency of the administrative findings. See *Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79, 91 (1968). The mere denial of the truth of an agency's findings is not sufficient to make out a claim upon appeal. *Despatchers' Cafe, Inc.* v. *Somerville Housing Authy.,* 332 Mass. 259, 261 (1955).